**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICK TROTTER, | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-69 |
| | ) | |
| MARCUS IRWIN, | ) | |
| *Defendant*. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Patrick Trotter, by its attorneys at the Mizner Law Firm, files this Complaint and states as follows:

1. Plaintiff Patrick Trotter is an adult individual with a residence at 63 E. Congress Street, Corry, Pennsylvania 16407.

2. Defendant Officer Marcus Irwin is an adult individual employed as a police officer by the Corry Police Department, located at 20 E South Street, Corry, Pennsylvania 16407. At all relevant times, Officer Irwin was acting under color of state law, and is being sued in his individual capacity.

### B. Jurisdiction and Venue

3. This Complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983.

4. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

5. This Complaint also includes pendant state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

**C. <u>Facts</u>**

7. At all times relevant to this action, Mr. Trotter was employed by Corry Rubber Corporation as a production supervisor, and by the Corry Area School District as the high school boys assistant basketball coach.

8. Mr. Trotter is married to Kelli Trotter.

9. On the evening of November 14, 2025, Mrs. Trotter was socializing with friends at the Pub, a local bar in Corry.

10. Mr. Trotter did not go out with them that evening, as he had a scheduled basketball practice early the next morning.

11. Late in the night, Mr. Trotter drove to the Pub to pick up his wife, to drive her home.

12. Mr. Trotter had not consumed any alcohol that night, either at his own home or at the Pub.

13. As they drove home on November 15, 2025, at 2:08 a.m., Mr. Trotter was stopped by Officer Irwin and Officer Kightlinger of the Corry Police Department at the intersection of Wayne Street and E. Frederick Street.

14. Officer Irwin approached Mr. Trotter at the driver side window, and Officer Kightlinger approached the passenger window where Mrs. Trotter was sitting.

15. Officer Irwin told Mr. Trotter that he had failed to activate his turn signal for 100 feet prior to turning onto E. Frederick Street.

16. Mr. Trotter responded that he had used his turn signal, but Officer Irwin would not listen and repeated that Mr. Trotter had not activated it 100 feet before the turn.

17. Officer Irwin ordered Mr. Trotter to provide his drivers license, insurance and registration, which Mr. Trotter provided without issue.

18. Officer Irwin then stated that he smelled alcohol coming from the vehicle.

19. Mr. Trotter responded that he had not had any alcohol, but that he had just picked up his wife from the Pub, and that she had been drinking that evening.

20. Officer Irwin ordered Mr. Trotter to exit his vehicle, to perform field sobriety testing.

21. Mr. Trotter calmly exited his vehicle, and agreed to perform field sobriety testing, knowing that he had not imbibed any alcohol and that the field sobriety testing would demonstrate he was sober.

22. Mr. Trotter performed the Horizontal Gaze Nystagmus (HGN) test without incident.

23. Mr. Trotter then performed the "Walk and Turn" test for Officer Irwin without incident.

24. Officer Irwin then directed Mr. Trotter to stand on one leg.

25. Mr. Trotter advised Officer Irwin that he had a recent back injury which had kept him off work, and that he had paperwork in the back of his vehicle which documented his injury.

26. Mr. Trotter asked if he could get the paperwork out of his car and provide it to the officers, but Officer Irwin ignored his request and directed him to balance on one leg.

27. Mr. Trotter did so, with difficulty due to his back, but was able to balance on his leg without falling.

28. At the completion of these tests, Officer Irwin told Mr. Trotter that he had taken an extra step during the "Walk and Turn" test, and that he was placing him under arrest.

29. When Mr. Trotter tried to speak with him, Officer Irwin said that "that is for the Courts" and told him again he was under arrest.

30. Mr. Trotter said he was not resisting, but as he was saying this Officer Kightlinger approached him from the side and Officer Irwin grabbed his arm.

31. Officer Irwin then swept Mr. Trotter's leg from under him, and took him to the pavement in the roadway of E. Frederick Street.

32. Officer Irwin then pulled Mr. Trotter's arm behind his back, put his knee in Mr. Trotter's back, and handcuffed him.

33. While Mr. Trotter was on the ground, the officers advised Mrs. Trotter that they "knew" Mr. Trotter had been in the Pub earlier that evening.

34. Mr. Trotter kept repeating that he had a serious back injury, which had kept him out of work for several months, and that the force they were using was exacerbating his injury and causing his pain.

35. The officers pulled Mr. Trotter to his feet, and placed him in the back of their police vehicle.

36. The officers took Mr. Trotter to the Corry Memorial Hospital and while in the parking lot, asked him if he refused to take a blood test.

37. Mr. Trotter told the officers words to the effect, "I am not refusing anything, but I am not saying another word."

38. At that point, Officer Irwin turned the vehicle around, and drove to the Corry Police Station and placed Mr. Trotter in the holding cell.

39. Mr. Trotter was never offered a breathalyzer test by the officers.

40. The officers refused to let Mr. Trotter make any phone calls, and told him "you can have a phone call when we let you go."

41. Mr. Trotter was released from custody several hours later, without any further explanation or being advised that he was charged with anything.

42. Ten days later, Mr. Trotter saw that his arrest had been published in the Corry Journal, which indicated he had been charged with driving under the influence.

43. Mr. Trotter appeared for a preliminary hearing on December 22, 2025, before District Justice Denise Marie Buell.

44. Before the hearing began, Mr. Trotter's attorney asked for the officer's dash-cam footage, and Officer Irwin was unable to provide it.

45. During the hearing, Officer Irwin provided testimony about how he had first observed Mr. Trotter, which conflicted with his sworn affidavit of probable cause.

46. During Officer Irwin's cross examination, the District Judge questioned him about whether Mr. Trotter had used his turn signal, and Officer Irwin confirmed that he had.

47. The District Judge asked Officer Irwin how long Mr. Trotter had his turn signal activated, and Officer Irwin testified that he did not know.

48. The District Judge then asked Officer Irwin when Mr. Trotter had resisted arrest, and Officer Irwin admitted that Mr. Trotter had not yelled, been belligerent, waved his arms, or pulled against the officers.

49. The District Judge then dismissed all the charges against Mr. Trotter.

50. Although his charges were dismissed, Mr. Trotter suffered negative consequences simply from their filing.

51. On January 4, 2026, Mr. Trotter was pulled to the side by human resources at Corry Rubber, and told the company felt it was best if they went separate ways. He was then terminated.

52. Prior to his firing, Mr. Trotter did not have any disciplinary issues, disputes or any other problems with his direct report or anyone else at Corry Rubber.

53. Mr. Trotter was not provided any basis for his termination, but was simply told that he was an at-will employee and Corry Rubber did not have to provide any reason for the termination.

54. Mr. Trotter asked for a copy of his personnel file, but was denied his file by the human resource officer.

55. Mr. Trotter believes and therefore avers that he was terminated because management at Corry Rubber read the news of his arrest that had been published in the Corry Journal.

**D. <u>Legal Standard Governing Seizures under the Fourth Amendment</u>**

56. The Fourth Amendment of the U.S. Constitution prohibits “unreasonable searches and seizures ....” U.S. Const. amend. IV.

57. To establish an unlawful search and seizure under the Fourth Amendment, a plaintiff must show that the defendant's actions: (1) constituted a “search” or “seizure” within the meaning of the Fourth Amendment, and (2) were “unreasonable” in light of the surrounding circumstances. *See Brower v. County of Inyo*, 489 U.S. 593, 595-600 (1989).

58. Under the Fourth Amendment, a seizure only occurs “when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” *Terry v. Ohio*, 392 U.S. 1, 19-20 n. 16 (1968).

59. The Supreme Court has held that a warrantless seizure of a person for purposes of a brief investigatory detention (a/k/a "a Terry stop") is reasonable absent a warrant, provided the officer had “a reasonable, articulable suspicion that criminal activity is afoot.” *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

60. Reasonable suspicion is an objective standard requiring “particularized justification.” *United States v. Mendenhall*, 446 U.S. 544, 551 (1980).

61. A constitutional claim of excessive force that occurs during an arrest is governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (“[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other ‘seizure’ of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]”); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (“In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.”).

62. “Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, . . . and certain factors, including: 'the facts and circumstances of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.’” *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386)).

**COUNT I - SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**

*Patrick Trotter*
*v.*
*Officer Marcus Irwin*

63. The foregoing averments are incorporated by reference herein, as if set forth in full below.

64. The Fourth Amendment guarantees Mr. Trotter's right to be free from unreasonable searches and seizures.

65. The legal standards which applied to Mr. Trotter's seizure on November 15, 2025, were clearly established prior to his arrest.

66. Officer Irwin had no legitimate basis to pull Mr. Trotter over and conduct an investigatory search of his person, nor any legitimate basis or probable cause to arrest him.

67. As a direct and foreseeable result of Officer Irwin's illegal search and seizure, Mr. Trotter was forced to endure arrest and detention for several hours, as well as publication of his unjustified arrest, and ultimate termination.

68. As a direct and foreseeable result of Officer Irwin's illegal search and seizure, Mr. Trotter has lost his employment and all associated benefits from his work as a supervisor at Corry Rubber.

69. Mr. Trotter was also subject to unnecessary and avoidable pain and suffering when he was arrested, exacerbating his pre-existing injury to his back.

70. As a result of Officer Irwin's illegal search and seizure of Mr. Trotter, he has suffered:

a. Mental anguish and upset;

b. Humiliation and embarrassment; and

c. Loss of life's pleasures.

WHEREFORE, Plaintiff Patrick Trotter requests that this Honorable Court enter judgment in his favor and against Defendant Officer Marcus Irwin in excess of seventy-five thousand dollars ($75,000.00), along with such other relief as this Honorable Court may deem appropriate or just.

**COUNT II - EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT**

*Patrick Trotter*
*v.*
*Officer Marcus Irwin*

71. The foregoing averments are incorporated by reference herein, as if set forth in full below.

72. The Fourth Amendment guarantees Mr. Trotter's right to be free from excessive force during an arrest.

73. The legal standards which applied to Mr. Trotter's arrest on November 15, 2025, were clearly established prior to his arrest.

74. There was no objectively reasonable basis for Officer Irwin to arrest Mr. Trotter on November 15, 2025, much less to use any force whatsoever to effectuate that arrest.

75. None of the traditional justifications for using force under the Fourth Amendment applied:

a. the severity of the crime at issue, failing to use a turn signal for a full 100 feet prior to the turn was minimal;

b. Mr. Trotter did not pose an immediate threat to the safety of the officers or others, as he was at all times compliant, cooperative and respectful towards the officers;

c. Mr. Trotter promptly stopped his vehicle when the officers activated their lights, promptly provided the information and documentation requested of him, promptly exited his vehicle when asked, fully performed the field sobriety tests requested, and complied with the officers' directives that he was being placed under arrest. He made no attempt to fight or flee at any time during his encounter with Officer Irwin.

76. Despite the lack of probable cause for his arrest, and the lack of any reasonable basis to use any force, Officer Irwin decided to forcibly take Mr. Trotter to the ground in the roadway, and then apply force to his back with his knee while handcuffing Mr. Trotter.

77. This force exacerbated the pre-existing injury to Mr. Trotter's back, which had forced him to miss a substantial amount of time working at Corry Rubber.

78. Officer Irwin was aware of Mr. Trotter's back injury prior to taking him to the ground with force, but did so anyway with deliberate and reckless indifference to his condition, and with utter disregard for the lack of objective necessity to use any force whatsoever.

79. As a direct and foreseeable result of Officer Irwin's illegal and excessive use of force, Mr. Trotter was subject to unnecessary and avoidable pain and suffering when he was arrested, exacerbating his pre-existing injury to his back.

80. As a result of Officer Irwin's illegal and excessive force, Mr. Trotter, he has suffered:

a. Mental anguish and upset;

b. Humiliation and embarrassment; and

c. Loss of life's pleasures.

WHEREFORE, Plaintiff Patrick Trotter requests that this Honorable Court enter judgment in his favor and against Defendant Officer Marcus Irwin in excess of seventy-five thousand dollars ($75,000.00), along with such other relief as this Honorable Court may deem appropriate or just.

## <u>COUNT III - FALSE IMPRISONMENT</u>

*Patrick Trotter*
*v.*
*Officer Marcus Irwin*

81. The foregoing averments are incorporated by reference herein, as if set forth in full below.

82. The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention. *Renk v. City of Pittsburgh*, 537 Pa. 68 (1933).

83. Here, Mr. Trott was illegally detained by Officer Irwin when he initiated a traffic stop that led to his arrest without reasonable suspicion, and when he effectuated his arrest without probable cause to do so.

84. As a direct and foreseeable result of Officer Irwin's false imprisonment, Mr. Trotter was forced to endure arrest and detention for hours before he was released.

85. As a direct and foreseeable result of Officer Irwin's false imprisonment, Mr. Trotter lost his employment and all associated benefits from his work as a supervisor at Corry Rubber.

86. Mr. Trotter was also subject to unnecessary and avoidable pain and suffering when he was arrested, exacerbating his pre-existing injury to his back.

87. As a direct and foreseeable result of Officer Irwin's false imprisonment, Mr. Trotter has suffered:

a. Mental anguish and upset;

b. Humiliation and embarrassment; and

c. Loss of life's pleasures.

WHEREFORE, Plaintiff Patrick Trotter requests that this Honorable Court enter judgment in his favor and against Defendant Officer Marcus Irwin in excess of seventy-five thousand dollars ($75,000.00), along with such other relief as this Honorable Court may deem appropriate or just.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

PA Supreme Court ID 53323
John F. Mizner
jfm@miznerfirm.com

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

**JURY TRIAL DEMANDED**